**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS WOOD | No. 1:22-cr-00094-LEW |

**GOVERNMENT SENTENCING MEMORANDUM**

The United States of America respectfully submits this memorandum to address contested matters in the revised presentence report and to assist the Court in sentencing. The government addresses the following unresolved issues:

1. Whether the defendant's convictions identified in paragraphs 66, 67, 68, 69, and 70 for Violations of Condition of Release are or should be counted in calculating the defendant's criminal history;

2. The extent to which the PSR calls on the Court to consider bare arrest records or complaints to increase the defendant's sentence;

3. Whether the cross reference at U.S.S.G. §2G2.2(c) applies to the conduct in this case;

4. Whether U.S.S.G. §2X1.1(b)(1) should apply;

5. Application of reduction for acceptance of responsibility under §3E1.1(a) and (b); and

6. The application of §2G2.2(b)(5), to the extent 2G2.2 applies.

1

## ARGUMENT

**A. Maine Violation of a Condition of Release produces countable criminal history points, and under any analysis Mr. Wood is CHC III**

The Revised presentence report ("PSR") calculates six criminal history points under six separate convictions, but notes that only four of these may be counted under 4A1.1(c). PSR ¶ 71. Paragraph 63 relates to a juvenile conviction for possession of sexually explicit material occurring less than five years prior to the current offense conduct, and Paragraph 65 relates to terrorizing. Paragraph 68 assigns one point for a sentence for molesting lobster gear in addition to violating a condition of release ("VCR"). The defendant does not object to, and the government is aware of no basis for, omitting the three points assigned for these three sentences. The only question relevant to the criminal history score is, then, if any of the VCR convictions recounted in paragraph 66, 67, and 70 contain a countable sentence. The only possible resulting difference is between a Criminal History Category II and Category III. As set forth below, the PSR correctly calculates Mr. Wood as Category III.

Pursuant to U.S.S.G. § 4A1.2(c), sentences for misdemeanor and petty offenses are counted unless they are excluded under § 4A1.2(c)(1) or (2). The offense of VCR is not enumerated in § 4A1.2(c)(1) and is not "similar to" the offenses enumerated in that subsection.

In *United States v. Spaulding*, 339 F.3d 20 (1st Cir. 2003), the Court of Appeals for the First Circuit ("Court of Appeals") concluded that a Maine VCR conviction is not "similar to" the offense of disorderly conduct/disturbing the peace as enumerated in § 4A1.2(c)(1). *Id.* at 22-23, and that it appropriately counted toward a criminal history point. 339 F.3d at 23. In so holding, the court noted that "violation of a court order is a

more serious offense than a run-of-the-mill public-disturbance case," in part because it evinces a higher risk of recidivism and a lower regard for the criminal justice system. *Id*. The validity of this reasoning holds even when a separate criminal charge for the violating conduct is dismissed. *Id*., n. 3.

While *Spaulding* is clear how and why Maine VCR convictions fall outside the offenses listed in § 4A1.2(c)(1), courts in this District have nonetheless held that Maine VCR is also distinct from the enumerated offense of "contempt of court." *United States v. Woodard*, 2012 WL 5254899, *6 (D. Me. Oct. 23, 2012), Judge Woodcock conducted an analysis of the elements of both Maine VCR under 15 M.R.S.A. § 1092 and 18 U.S.C. § 401, ultimately finding the offenses dissimilar.

Some courts have conducted additional analysis of the circumstances giving rise to the VCR conviction, including the nature of the condition violated. *See, e.g.*, *United States v. Thurlow*, 2:16-cr-55-DBH, Dkt # 57. This analysis is unnecessary, and is arguably counter to the elements-based analysis set forth in *Spaulding*. In *Spaulding*, the First Circuit specifically stated that violating a court order is more significant than a "run-of -the mill public disturbance case" because it violates a court order. 339 F.3d at 23. Making individualized assessments of the type of court order or the type of conditions is in tension with the First Circuit's elements-centered analysis. Nonetheless, such an analysis would also result in the same conclusion in this case. The conviction described in Paragraph 67 relates to an incident involving multiple assaults, including with a pickup truck. As in *Spaulding*, the fact that the assault counts were ultimately dismissed is of no moment.

Accordingly, Mr. Wood is appropriately scored as a Criminal History Category III.

### B. There is sufficient evidence to support the challenged narratives associated with the criminal history detailed in the PSR

The defense does not indicate what facts it sees as under-supported, or what aspect of the guideline calculation may be affected by the allegedly under-supported facts. Facts not relevant to sentence can be safely ignored by the Court . *See* Fed.R.Crim. P. 32(h)(3)(B). Facts supporting a criminal history point are, by definition, not bare complaints or arrest records, but are buttressed by a conviction. *See United States v. Marrero-Perez*, 914 F.3d 20, 22-23 (1st Cir. 2019). For the remainder, the government submits that there is competent proof that the PSR's accounts are accurate. This is not a case in which the probation officer has made clear that the officer is passing along allegations without review. *Cf. United States v. Castillo-Torres*, 8 4th 68, 72 (1st Cir. 2021) (noting that the officer made clear the officer was not taking a position on the facts). Indeed, in reporting the information in the following paragraphs, the probation officer relied on certain documents collected during his investigation.

Many of the criminal complaints and reports at issue involve robust, multi-faceted police investigations, and include firsthand accounts from officers, and the types of evidence that are routinely admitted as non-hearsay or exceptions to the hearsay rule because of their reliability. *See United States v. Castillo-Torres*, 8 F.4th 68, 71-72 (1st Cir. 2021). The government will submit at sentencing additional documentation demonstrating relevant facts by a preponderance of the evidence. "[A]t sentencing judges have long been free to rely on anything useful that is established by a preponderance of the evidence, without regard to ordinary rules of trial evidence. Marrero-Perez, 914 F.3d at 23 (citations omitted). Specific paragraphs are supported, in part, as follows:

- Paragraph 63. The factual statements in this paragraph are supported by the conviction, in addition to the underlying documents.

- Paragraph 64.  The report relating to this incident will be submitted as GSE 52, Eclipse 11313-11322.  The report includes statements made by the defendant to sheriff's deputies at the time of the incident.  Notably, at the time of the incident the defendant did not make any of the statement about gunfire that he made to probation, as reflected in Paragraph 64.

- Paragraph 65.  The description of the conduct in this paragraph is buttressed by the conviction.

- Paragraph 66.  The report is based on the deputy's own observations, not reported hearsay, and the narrative is buttressed by the conviction.

- Paragraph 67.  The narrative and the reports are buttressed by the conviction.  In addition, the reports at GSE 43 describe multiple witness accounts, and Mr. Wood's admissions that he was at the scene of the incident, although he denied certain assaultive conduct.

- Paragraph 68.  This conduct relates not only to a conviction, but also to an exhaustive report which includes recitations of the officer's collecting video evidence and admissions against interest by many of Mr. Wood's co-conspirators, who all independently name Wood as the ringleader.  Relevant reports from the Marine Patrol will be provided as GSE 50.

- Paragraph 69.  The subject conduct is not a nameless allegation, but the official report of a sworn law enforcement officer who observed the conduct personally and spoke with Wood at the scene.  Wood's own statements are related in the reports, which will be provided as GSE 56.

- Paragraph 70.  The narrative associated with this conduct is buttressed by a conviction, and involves the defendant' arrest at the scene by the investigation officers.
- Paragraph 72.  The narrative regarding this conduct is supported by the conviction, to the extent the Court deems it relevant to sentencing.
- Paragraph 73.  This conduct is supported by robust reports and multiple witnesses.  In addition, Wood himself was interviewed and admitted to several salient facts, to include being at the location and being in a physical altercation with the victim.  Supporting records will be provided as GSE 46.
- Paragraph 74.  The narrative in this report are not simply hearsay reports, but also cite to videotaped footage of the crime being committed and certain admission by Wood, and are therefore the type of reliable statements upon which the court can make a finding, if deemed relevant.
- Paragraph 79.  This narrative is supported by a robust police investigations, including recovered text messages, DNA matches, and admissions by Wood.  Wood was alleged to have raped a 14-year-old girl.  In an interview with police, Wood claimed he had not ejaculated and that he did not know the child's age.  There was evidence collected indicating that Wood had access to the child's Snap account and would have had an opportunity to delete messages proving he knew the child to be 14.  Police also collected Wood's DNA from semen sample removed from the seen.  Wood claimed he thought the child was 16, and without the Snap messages and in light of other prior statements by the victim, the District Attorney declined the case.  The evidence collected by police, along with the ample other evidence reflected in

the PSR, indicted that Wood in fact targeted 13- and 14-year-old girls for sex and would in no way have been dissuaded had he known the child's actual age. Taken as a whole, there is a strong indication that Mr. Wood knowingly assaulted a 14-year-old girl. This act is relevant to the pattern of abuse enhancement discussed below. Relevant reports and evidence will be provided as GSE 42.

Additional materials relevant to Mr. Wood's history and characteristics will be provided to the Court for the Court's appropriate use as described in *Marrero-Perez*.

### C. Application of §2G2.2(c) cross reference to 2G2.1.

The government asserts that the 2G2.2(c) cross reference applies because one of the defendant's clear objects was to obtain child pornography. *United States v. Bauer*, 626 F.3d 1004, 1009 (8th Cir. 2010) (noting, in a case involving solicitation of images from an undercover officer, that application of the cross reference reflects the "common sense notion" that those who produce or attempt to produce child pornography are more dangerous than those who seek solely to receive or possess it) (citing *United States v. Dawn*, 129 F.3d 878, 884 (7th Cir. 1997)).

As preliminary matter, neither the defendant nor the Probation Office cites First Circuit precedent stating that attempted production of child pornography does not fall squarely within the cross reference. The term "involving" in § 2G2.2(c) is not obviously limiting in this regard, and the commentary states that the cross reference "is to be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement" a child to produce a sexually explicit image. U.S.S.G. § 2G2.2, Application Note 7. Here, uncontested portions of the PSR contain

7

ample evidence that the defendant employed, by turns, enticement, persuasion, inducement, and coercion in his attempts to obtain child pornography from Minor A. His failure to obtain the *res* does not diminish his own completed acts in this regard, nor does it make the cross reference less applicable on any theory of applicability. Moreover, production of child pornography was an object of the relevant conduct under § 1B1.3, and the cross reference is therefore appropriately applied to this object offense. *United States v. Garcia*, 411 F.3d 1173, 1177 (10th Cir. 2010).

Both the PSR and the defendant appear to conclude that because the defendant did not obtain images, the cross reference only applies to the extent the defendant used a notice or advertisement in the attempt to obtain child pornography. Neither cite First Circuit authority for this proposition. While the government has found none on the specific point of 2G.2.(c), the First Circuit has addressed the inclusion of inchoate offenses under other guidelines.

In the context of the career offender enhancement, the First Circuit has held that Guideline commentary including inchoate offenses within the definition of "controlled substance offense" for purposes of §4B1.1 did not go beyond the reasonable meaning of the guideline itself. *United States v. Piper*, 35 F.3f 611, 618 (1st Cir. 1994). More recently, other circuits have rejected this view. *See, e.g.*, *United States v. Campbell*, 22 F.4th 438, 443 (collecting cases, and noting that the D.C., Sixth, Third, and Fifth Circuits have rejected attempt and conspiracy in the career offender context, while the First, Second, Seventh, Eighth, and Eleventh Circuits have continued to count inchoate offenses for this purpose). But, notably, the First Circuit has continued to construe the career offender guideline as reasonably encompassing conspiracy and attempt even after the Supreme Court's decision in *Kisor v. Wilkie*, 139 S.Ct. 2400

(2019). *United States v. Lewis*, 963 F.3d 16 (1st Cir. 2020), cert denied, 141 S.Ct. 2826 (2021). While the career offender guideline and associated commentary are not precisely parallel with the relevant provisions in this case (particularly in that the commentary in *Piper* and *Lewis* specifically mentions inchoate offenses and the commentary to § 2G2.2 does not), the relevant holding is that inchoate offenses can reasonably be read to be within the scope of a guideline not specifically citing "attempt."

Nonetheless, the result is the same if the Court limits its analysis to the "notice or advertisement" portion of the cross reference. The defense argues that the Eleventh Circuit case of *United States v. Caniff* provides the correct rule. 955 F.3d 1183 (11th Cir. 2020). There, the court struggled with the admittedly broad term "notice" within the context of 18 U.S.C. §2251(d). The defense argument misses the mark however, because Caniff construes §2251(d), not U.S.S.G. §2g2.2(c). This is significant, because the cabined use of "notice" the Eleventh Circuit arrived at required interpreting "notice" in the context of other words that appear in §2251(d), specifically "make" "print" and "publish." Those terms do not appear in the subject cross reference, and therefore the defendant's reliance of *Caniff* is misplaced. If the analysis were simply one of importing all violations of § 2251 into § 2G2.2, the cross reference would still apply, as § 2251 specifically includes attempt and conspiracy. Thus, there is no way of parsing Caniff that supports the defendant's position.

In addition to being inapposite, *Caniff* is also not the best reading of § 2251(d). As cited by the Probation Office, the Sixth Circuit holding in *United States v. Sammons*, 55 F.4th 1062 (2022) specifically rejects *Caniff*, and provides a plain-meaning interpretation of the term "any notice." In *Sammons*, the Sixth Circuit first observed that § 2251 was intended to reach a broad swath of conduct, and should therefore

9

include more likely notices directed to a single person, in addition to broadcasted advertisements which are far less likely to occur in the real world. *Id.* at 1168. In reaching this conclusion, the court observed that "notice" often encompasses private communications in both everyday and legal usage, citing examples such as notice of debt, notice of proposed suspension, and others appearing in federal statute. *Id.* at 1166.

But, appropriately limiting the analysis to the language of § 2G2.2(c), there is no doubt that the plain, expansive meaning of "any notice" as used in the cross reference includes the communications at issue in this case, and largely for the reasons set forth in *Sammons*.

### D. Application of §2X1.1

The probation office has correctly assessed that Mr. Wood is not entitled to a reduction for attempt under the facts of this case. As the First Circuit explained in *United States v. Serunjogi*, "The question of whether the offense was substantially completed is a judgment call" consigned to the sentencing judge. 767 F.3d 132, 143 (1st Cir. 2014). "It is the nearness of the crime to achievement—not the precise nature of the involuntary interruption—that defeats the reduction available for conspiracies and attempts that have not progressed very far." *United States v. Chapdelaine,* 989 F.2d 28, 36 (1st Cir.1993).

Here, Mr. Wood conducted repeated, blatant, and individually criminal acts in his pursuit of sex and sexually explicit materials from Minor A, whom Wood knew to be an actual minor very near at hand. Based on these facts, the Court can find that the three-point reduction does not apply for the reasons set forth by the Probation Office. *Chapdelaine*, 989 F.2d 28, 36 (holding that a defendant who had equipped himself for a robbery and arrived at a designated location, and was denied only by the early departure

10

of the targeted armored truck, was not entitled to a reduction under U.S.S.G. 2X1.1(b)). The Court can, based on this record, find that Mr. Wood is not entitled to any reduction under 2X1.1.

### E. The defendant is not entitled to any reduction for acceptance of responsibility.

Section 3E1.1(a) of the Guidelines indicates a two-point reduction in offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense."[1] Here, the defendant has not clearly indicated an acceptance of responsibility. First, he has obstructed justice. Second, even taken on its own terms and in light of the surrounding circumstances, the defendant's guilty plea does not present substantial evidence of acceptance of responsibility.

#### 1. The defendant obstructed of justice.

The commentary to the Guidelines states that "[c]onduct resulting in an enhancement under ' 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." A defendant is not entitled to the acceptance reduction simply because he pleaded guilty. *United States v. D'Angelo*, 802 F.3d 205, 210 (1st Cir. 2015); *United States v. McDowell*, 888 F.2d 285, 292 n. 2 (3rd Cir. 1989). In cases where the defendant has also obstructed justice, a reduction for acceptance is quite uncommon, and the defendant bears the burden of showing his is extraordinary case, <u>United States v. Maguire</u>, 752 F3d 1, 6 (1st Cir. 2014; *United States v. Gonzalez*, 12 F.3d 298, 300 (1st Cir. 1993).

In *United States v. D'Andgelo*, the First Circuit reiterated that cases in which both the obstruction enhancement and the acceptance reduction simultaneously lie are

---

[1] Section 3E1.1(b) allows for an additional one-point reduction in certain circumstances, upon motion by the government. For the myriad reasons set forth herein, the government is not so moving in this case.

"hen's-teeth rare." 802 F.3d at 210. In *D'Andgelo*, the defendant had denied certain relevant conduct and written letters to his codefendant suggesting that they engage in fabrications to make their case more viable. 802 F.3d at 208. The sentencing court found a basis for obstruction on the letters, and declined to give a reduction for acceptance, even though the defendant argued that he had not committed any new criminal conduct since entering his guilty plea. The circuit court affirmed the sentence, and noted that both the obstruction and the frivolous denial of relevant conduct were bases for denying the acceptance reduction. *Id.* at 211.

Here, the defendant deleted social media accounts and the associated data from his phone, knowing that federal agents were investigating his use of social media accounts to engage in sexual advances on underage girls. GSE 2, 3, 20. This conduct is the basis for Count 3 of the substitute information. A month later, the subject Snap account itself was deleted. GSE 8.

But this destruction of evidence is not the only obstruction of the present charges. After deleting evidence from his phone that would have connected him directly with the accounts used to contact Minor A in the course of the Counts 1 and 2, Wood capitalized on the absence of this evidence by blaming another person, J.S., for the conduct Mr. Wood eventually pleaded guilty to. Conveniently enough, blaming J.S. for his own conduct was the same falsehood he had imparted H.G's fiancé in the days following Minor A's screen capture of his obscene proposal, when Mr. Wood did not know if his conduct had been reported by Minor A.[2] PSR ¶13. Mr. Wood did not abandon this theory prior to trial, and had subpoenaed witnesses toward that end.

---

[2] Somewhat ironically, Minor A had not reported Wood at this time, and it appears that Mr. Wood's attempt to get ahead of the story by first blaming J.S. served only to shed light on Mr. Wood's actions.

12

Beyond this, after his indictment and shortly before his first trial date, Mr. Wood also claimed to at least one person in the local community, Suzanne Eaton, that Minor A's mother was falsifying the charges against him out of spite and vengefulness, and that Minor A's mother should admit her conduct to clear his name. It is hard to construe these statements to a friend of a witness as having some other purpose than influencing the testimony of a witness, or at least attempting to attack the witnesses' reputation in the local community. This incident occurred at a local store, while Mr. Wood was ostensibly in third party custody. He also used the opportunity of talking to this friend of Minor A's mother and of J.S. to find out what Ms. Eaton might know about the investigation.

### 2. The defendant's plea of guilty was not timely, and his acceptance of responsibility is not notable.

The defendant agreed to plead guilty after indictment, after three continuances of the trial date, three weeks after jury selection, and just hours before the jury was to be sworn and the first witness called. He pleaded guilty only after all witness had been subpoenaed and cancelled work and other commitments, as presumably had the jurors. Mr. Wood did not plead guilty to all counts of the indictment, but instead to a substitute information that did not carry a mandatory minimum sentence on Count 1.

As stated above, it is the defendant's burden to show he has accepted responsibility, and in a case where he has obstructed justice, he must show that to be extraordinary. The PSR points to three bases for this conclusion: that Mr. Wood has not engaged in criminal conduct since his arrest in August of 2022 (after which he was on highly restrictive bail conditions), he pleaded guilty, and he provided forthright information in his presence interview. None of these are noteworthy or exceptions.

13

Abiding by bail condition and jail rules is the expectations and the base line, and therefore does not serve to distinguish Mr. Wood in any meaningful way. Similarly, as stated above, he is not entitled to a reduction as a matter of right simply for entering a plea of guilty, particularly one tendered so late and under the present circumstances.

As to Mr. Wood's forthrightness, this claim is undermined by two points in the PSR. Certainly, Mr. Wood is under no obligation to make any statements, much less ones that might put his history and characteristics in a negative light. But this is a sex offense case, and his declining to answer any sex-offender questions makes any other perceived forthrightness somewhat meaningless in the relevant context. Moreover, some of the details Mr. Wood shared with probation cast doubt on his veracity. Specifically, Mr. Wood made claims about being shot at as recorded in PSR ¶64. The contemporaneous reports reflected in Hancock SO Incident 14-03868 do not include such claims from Wood or his passenger. GSE 52.

In light of the above, Mr. Wood has failed to demonstrate a departure for acceptance is warranted, much less that his acceptance is in any way extraordinary in the face of his acknowledged obstruction.

### F. Under U.S.S.G § 2G2.2(b), the pattern of abuse enhancement would apply to this case; the underlying conduct is nonetheless applicable to 3553(a) factors.

U.S.S.G. ' 2G2.2(b)(5) provides for a five-point enhancement if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The application notes to this section define "sexual abuse or exploitation" as:

(A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense

> under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. ' 2G2.2, application note 1. This same application note also defines "pattern of activity involving the sexual abuse or exploitation of a minor" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

By the plain language of the guideline, application of the enhancement is mandatory for qualifying offenders. *United States v. Plotts*, 374 F.3d 873 (10th Cir. 2003) ("A plain reading of [then-enumerated] subsection (b)(4) shows that it mandates a five-level enhancement for qualified offenders.").

### 1. The uncontested portion of the PSR fully supports the enhancement.

Here, the uncontested facts set forth in Paragraphs 7, 8, and 11 of the PSR describe multiple instances of attempted sexual exploitation of a minor as proscribed by § 2251(a) and (d). Specifically, Wood, using electronic communications, asked for nude photographs from multiple victims prior to engaging Minor A, and then made multiple attempts to receive child pornography from Minor A, who was then 12.

15

That these particular acts did not net Mr. Wood his intended result is of no moment to his culpability. Attempted exploitation of a minor is a violation of § 2251, nonetheless. *See United States v Polk*, 546 F.3d 74, 75 (1st Cir. 2008) (defendant convicted of attempted production of child pornography for pressuring undercover agent posing as 13-year-old girl to send sexually explicit images). See also *United States v. Broxmeyer*, 699 F.3d 265, 269-71 (2d Cir. 2012) (soliciting nude images to be produced and sent by cell phone constituted attempted production even though clothed images were sent). Moreover, the application note to U.S.S.G. § 2G2.2(b)(5) specifically includes "attempt or conspiracy" to commit the listed offenses as predicate offenses for the enhancement. U.S.S.G. ' 2G2.2, application note 1; *United States v. Morgan*, 842 F.3d 1070, 1076-77 (8th Cir. 2016) (attempted production of child pornography properly deemed part of predicate for pattern of abuse enhancement). *See also United States v. Cates*, 897 F.3d 349, 356 ("it cannot be gainsaid that 'an attempt . . . to commit any of the offenses' constituting sexual abuse or exploitation of a minor is an independent 'instance' contributing to a pattern of 'two or more instances' of abuse.").

### 2. The conduct described in Paragraph 79 is also relevant to the application of the enhancement

The conduct described in Paragraph 79 forms, in part, a similar predicate for the enhancement. Specifically, the defendant, who was seven years older than a girl of 14, had sexual intercourse with the girl, possibly by force. GSE 42.

The Court is able to rely on the robust investigation record provided by the Scarborough Police Department, which includes information about DNA evidence, admission by Wood, and records of communications between Wood and the victim. There is no right confrontation at sentencing, and the Court may rely on hearsay

16

statements. In addition, the First Circuit has repeatedly held that reliable hearsay is a proper basis for making sentencing determinations. *United States v. Lee*, 892 F.3d 488, 492 (1st Cir. 2018) ("A defendant's rights under the Confrontation Clause do not attach during sentencing"); *United States v. Luciano*, 414 F.3d 174, 178 (1st Cir. 2005) (reaffirming, post-*Crawford*, that "there is no Sixth Amendment Confrontation Clause right at sentencing."). Indeed, the First Circuit has held that even hearsay statements of confidential informants may be relied upon, if they otherwise show sufficient indicia of reliability and accuracy. *United States v. Green*, 426 F.3d 64, 67 (1st Cir. 2005) (holding that sufficiently detailed, mutually supporting, and internally consistent hearsay from five confidential informants was sufficient to establish the defendant's leadership in the criminal enterprise, his use of stash houses, and his volume of distribution). See also, *Coffin*, 946 F.3d at 7.

Police reports that themselves convey indicia of reliability are sufficient foundation for the Court's findings at sentencing. *United States v. Pinet-Fuentes*, 888 F.3d 557, 560 (1st Cir. 2018) (police report submitted to show that machinegun was stolen); *United States v. Ruby*, 706 F.3d 1221, 1228-29 (10th Cir. 2013) (noting that hearsay may be considered at sentencing, if the statements "bear some minimal indicia of reliability") (quoting *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012)). Here, the statements made by the victim to the police are clear and particular. They comport with Woods' admission to being at a hotel with the victim and having some form of sexual contact with the child resulting, at the very least, in the excretion of what Wood referred to as "precum."

### 3. Wood's pattern of abuse relates directly to the offense of conviction and is appropriately aggravating under Section 3553(a).

As stated above, the application of the guideline would be mandatory under the facts of this case if §2G2.2 applied, even setting aside the contested relevant conduct. In addition, the defendant's conduct towards minors is particularly aggravating within the context of the crime to which he pleaded guilty.

### G. 3553(a) factors.

The PSR and the government exhibits largely speak for themselves. In summary, the government respectfully submits that the history and characteristics of the defendant reflect poorly on his ability or will to go through life without harming others, their property, livelihoods, physical integrity, or reputations. He has proven himself to have an acute sexual interest in pubescent girls and a willingness to act on that interest, repeatedly. In short, Mr. Wood has shown himself to be a danger to society, and §3553(a)(2)(C) looms large in crafting the appropriate sentence in this case. No matter what term of imprisonment is imposed, however, it should be followed by a significant term of supervised release of no less than 20 years.

Dated: November 3, 2023

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

BY: /s/ CHRIS RUGE
CHRIS RUGE
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street
Bangor, Maine 04401
(207) 945-0373
Chris.ruge@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I electronically filed **the Government Sentencing Brief** with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Grainne Dunne, Esq., at gdunne@hww.law

                        DARCIE N. MCELWEE
                        United States Attorney

                        <u>BY: /s/ Chris Ruge</u>
                        Chris Ruge
                        Assistant United States Attorney
                        United States Attorney's Office
                        202 Harlow Street
                        Bangor, Maine  04401
                        (207) 945-0373
                        Chris.ruge@usdoj.gov