UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | DOCKET 1:22-cr-00094-LEW |
| | ) | |
| NICHOLAS WOOD | ) | |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

The defense requests the Court impose a sentence of under 36-months, followed by a term of supervised release. Nick respectfully submits that, when weighing the 3553(a) factors, a sentence of less than 36-months followed by a term of supervised release is a sufficient but not greater than necessary punishment.

## I. NICK'S OUTSTANDING OBJECTIONS TO THE REVISED PRESENTENCE INVESTIGATION REPORT.

At sentencing, a court may accept any undisputed portion of the presentence report as a finding of fact. Fed. R. Crim. P. 32(i)(3)(A). However, it must rule on any remaining disputed issues unless the Court finds the ruling is unnecessary either because the matter will not affect sentencing, or it will not consider the matter in making any sentencing determinations. 32(i)(3)(B). Where a defendant objects to factual statements contained in the PSR Report, a sentencing court may not rely on those facts unless proven by the Government by a preponderance of the evidence. *United States v. Murchison*, 865 F.3d 23, 26 n.3 (1st Cir. 2017). To support such a finding, any evidence introduced by the Government must contain sufficient indicia of reliability. *United States v. Rivera-Ruiz*, 43 F.4th 172, 181-82 (1st Cir. 2022) (administrative complaints without more, were insufficient to support a preponderance of the evidence finding); *United States v. Colon-*

1

*Maldonado*, 953 F.3d 1, 9 (1st Cir. 2020) (criminal complaints or arrest records, without more, insufficiently reliable to support a preponderance of the evidence finding); *United States v. Castillo-Torres*, 8 F.4th 68 71 (1st Cir. 2021) (reliability requirement not limited just to information relied on to support a variance or departure. "[W]e see no reason why we should find a bare allegation too unreliable to support a departure, yet sufficiently reliable here").

### A. Application of USSG § 2G2.1 Pursuant to Cross-Reference in § 2G2.2(c).

In the Revised Presentence Investigation Report (ECF No. 139) (hereafter "Revised PSR") the Probation Office found the appropriate guideline for 18 U.S.C. § 2252A(a)(B) offenses was USSG §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor). Revised PSR ⁋ 36. However, Probation found the cross-reference in § 2G2.2(c) to apply and thus, instead of §2G2.2, calculated Nick's guideline using § 2G2.1(Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production). Section 2G2.2(c) states:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, apply §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production), if the resulting offense level is greater than that determined above.

USSG § 2G2.2 (c).

According to the Probation Office, when calculated using USSG § 2G2.1, Nick begins at a base level 32, and following adjustments and a two-level reduction for acceptance of

responsibility, he has a total adjusted offense level of 36. Revised PSR ¶ 62.[1] When calculated

using guideline USSG § 2G2.2, Nick has a base offense level of 18. With adjustments, Probation

calculated his total offense level at 25.[2] With a criminal history category III, at a level 36, Nick

has an advisory guideline range of 235 to 293 months (19.6 to 24.4 years).  At level 25, Nick has

an advisory guideline range of 70 to 87 months (5.8 to 7.25 years). In other words, application of

the cross reference over triples Nick's advisory guideline range, increasing it by 13.8 to 17.2 years.

For the foregoing reasons, Nick respectfully maintains his objections to application of the

cross reference.

     i.     *Facebook "Friend Requests" and sending explicit images of himself is not "notice and advertisement" under USSG § 2G2.2(c).*

In the revised PSR, the Probation Office writes that "In this case, the defendant solicited

several teenagers by requests to be 'friends' on Facebook and then sent them the images of his

penis via Snapchat. He did this to entice/persuade/induce the minors to provide (and/or produce)

nude images of themselves to send to him. This conduct is 'seeking by notice or advertisement.'"

Revised PSR ¶ 36. To support this, the Probation Office cites to *United States v. Garcia*, 411 F.3d

1173 (10th Cir. 2005).

In *Garcia*, a law enforcement agent entered an internet chatroom titled "Preteen Posting &

Trading" posing as the mother of two minor daughters *Garcia*, 411 F.3d at 1175. The agent

engaged in an instant messenger chat with the defendant, who emailed two images of minors

---

[1] The defense respectfully submits there is a typographical error in paragraph 102 of revised PSR. Paragraph 102 refers to a total offense level 38, yielding a guideline imprisonment range of 292 to 365 months. PSR ¶ 102. However, as noted in paragraph 62, Probation calculated Nick' total offense level at 36. PSR ¶ 62. At a level 36 and criminal history III, Nick advisory guideline range would be 235 to 293 months.

[2] USPO's guideline calculation using §2G2.2 is detailed in footnote 3 of the revised PSR. The defense respectfully submits there is a mathematical error with respect to the point calculation: A base level 18, with a five-point adjustment pursuant to §2G2.2(b)(5); two-point adjustment pursuant to §2G2.2(b)(6), and two level enhancement for obstruction, when added together, yields a total offense level of 27 (rather than 32). The defense also maintains its objection to application of §2G2.2(b)(5) for the reasons discussed *infra*.

engaged in sexually explicit conduct and asked the agent to send him pictures of herself and her girls. *Id*. at 1176. When the agent claimed not to have any digital photos that could be sent via the internet, the defendant offered to send polaroid film if the agent agreed to send explicit pictures back. *Id*. The defendant described the explicit sexual acts he wanted photographed and mailed the film that day. *Id*. Defendant pled guilty to one-count of interstate distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). *Id*. The district court sentenced him to 97 months imprisonment. *Id*.

On appeal, Mr. Garcia challenged application of the cross reference pursuant to § 2G2.2(c). Specifically, he argued that because he did not produce the two photographs that he sent to the agent, he should not be subject to the cross-reference. *Id*. at 1178. The Tenth Circuit, however, affirmed Mr. Garcia's sentence. *Id*. It explained that Mr. Garcia's argument failed as he had mischaracterized the reason the district court applied the cross reference: the cross-reference applied not because Mr. Garcia sent the two explicit images to the agent, but rather, because of his repeated requests to the agent to engage in sexual acts with her minor daughters and his efforts to assist in photographing that activity (i.e., sending film in the mail to her). *Id*. at 1178-79.

In other words, contrary to the Probation Office's reading, *Garcia* does not support its conclusion that sending Facebook "friend requests" and an image of his own penis falls within the definition of "seeking by notice or advertisement" for purpose of application of § 2G2.2(c).

ii.   *Nick's communication was not for "the purpose of producing" sexually explicit depictions.*

Application of USSG § 2G2.2(c) is clearly targeted to punish defendants whose goal was not merely receipt, possession, or distribution of sexually explicit materials, but who instead sought to participate or facilitate its production. *See United States v. Dawn*, 129 F.3d 878, 884-85 (7th Cir. 1997) (application of production guideline appropriate where Defendant admitted to

creating the films he later was convicted of possessing); *United States v. Bauer*, 626 F.3d 1004, 1007, 1009 (8th Cir. 2010) (application of § 2G2.2(c) was not in error where defendant offered to provide funds for minor to purchase a web camera on the condition she take pictures of her genitals at his request and record herself masturbating and where he put the funds in the mail the next day.); *Garcia*, 411 F.3d at 1178-79 (cross reference applied where defendant made repeated requests to the undercover agent to send photographs of her engaging in sexual acts with her minor daughters and sent film in the mail to her to facilitate its production); *United States v. Wilkinson*, F.3d 1236, 1237 (10th Cir. 1999)( § 2G2.2(c) properly applied where defendant produced the pornographic visual depictions he was convicted of having in his possession).

However, in *United States v. Crandon*, defendant was convicted of receiving child pornography in violation of 18 U.S.C.S. § 2252(a)(2) after he traveled from New Jersey to Minnesota to meet up with a 14-year-old girl he had met online, engaged in sexual relations with the girl, and took approximately 48 photographs of her, including sexually explicit photographs. 173 F.3d 122, 124 (3rd Cir. 1999). At sentencing, the district court applied the cross-reference in § 2G2.2(c) and sentenced him to 78-months imprisonment. *Id*. at 125. However, the Third Circuit vacated defendant's sentence and remanded for resentencing on the basis that the district court failed to determine whether the defendant had acted for the *purpose* of producing visual depictions, or whether there was another motivation behind taking the photographs. *Id*. at 129 ("It is simply not enough to say 'the photo speaks for itself and for the defendant, and that is the end of the matter,' as the government's position would dictate, when the statute makes specific reference to the defendant's purpose in taking the photograph. Recalling the presumption against strict liability in criminal law, it is critically important to be certain that the defendant's purpose was, in fact, to create pornographic pictures.") (internal citations omitted).

In this case, Nick's purpose in his communication was to obtain the sexually explicit images. In other words, his primary purpose in the communication was his own receipt and possession of the images. Unlike the facts detailed above in the cases in which courts found § 2G2.2(c) appropriately applied, Nick's purpose was not to facilitate or aid in the production or creation of images. As such he is not appropriately sentenced under the child pornography production guidelines.

iii.    *Purely private communication does not fall within the definition of "notice or advertisement" for purpose of USSG § 2G2.2(c).*

First, Nick contends that his conduct does not fall within the legal definition of "notice or advertisement" as included in § 2G2.2(c). Neither the Probation Office nor undersigned counsel were able to locate any clear First Circuit precedent interpreting "notice or advertisement" in § 2G2.2(c). However, other circuits have interpreted the definition of "notice and advertisement" in the context of 18 U.S.C. §2251(d)(1). For example, in *United States v. Caniff,* defendant challenged his conviction under 18 U.S.C. §2251(d)(1) on the basis that his text message communication with an undercover agent asking for pictures of her genitalia and of her masturbating was not "notice or advertisement." 955 F.3d 1183, 1188-89 (11th Cir. 2020). The Eleventh Circuit agreed. *Id*. It vacated his conviction finding that "notice" as included in the statute did not encompass private, person-to-person text communication. *Id*. at 1191-92.  However, as noted by the Probation Office in the Revised PSR, in interpreting the same statute, the Sixth Circuit reached a contrary decision. Revised PSR ⁋ 36.[3] In *United States v. Sammons*, in response to a fictitious online posting by a law enforcement agent feigning interest in incestuous sexual abuse, the defendant offered to share videos of himself abusing his niece and repeatedly requested in

---

[3] In the Revised PSR, the Probation Office also cited to *United States vs. Garcia*, 411 F.3d 1173 (10th Cir. 2005). However, in *Garcia*, the issue of whether Defendant's private message met the definition of "notice or advertisement" was not raised and therefore not considered by the Court.

return that the agent provide him with videos of the agent abusing her (fictitious) daughter. 55 F. 4th 1062 (6th Cir. 2022). Contrary to the Eleventh Circuit, the Sixth Circuit concluded "notice" did encompass defendant's private text communication with the agent. *Id*. In reaching its conclusion, the *Sammons* Court focused on the word "any" in §2251(d)(1) (*Id*. at 1067) and practical application considerations with determining what qualifies as public, among other factors. *Id*. at 1068.

Nick respectfully urges this Court to adopt the approach of the Eleventh Circuit. Moreover, as the Eleventh Circuit reasoned in *Caniff*, the plain meaning of the word "advertisement" clearly entails a public and typically commercial statement. *Caniff*, 955 F.3d at 1188 (citing Webster definition "a public notice, esp. in some public print, as a newspaper, periodical, book, poster or handbill" and Oxford English Dictionary definition "a public notice or announcement, now esp. one advertising goods or services.") (cleaned up). With respect to "notice," the Eleventh Circuit found that while some dictionaries had defined the word broadly enough to encompass targeted communications (*Id*. citing to Dictionary.com definition including "a note, placard, or like conveying information or warning"), however it found that others clearly referred only to public communications *Id*. at 1189 (citing Website definition of notice to include "a written or printed sign…communication information or warning as in to put a notice on the door" and Black's definition "a written or printed announcement.") (cleaned up). Turning to the interpretive cannon of noscitur a sociis, instructing "words grouped in a list should be given related meanings" the Court found that the placement with "advertisement" – a term clearly denoting only public communication – suggested that "notice" was also intended to apply only to communications that were public in nature. *Id*. at 1190-91 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012)). However, unable to ultimately and clearly resolve the

intent of the statute, the *Caniff* Court applied the rule of lenity and held "notice" as used in § 2251(d)(1) did not include private, person-to-person text messages.

**B.   USSG § 2G2.2(b)(5) Pattern Enhancement.**

In footnote three of the Revised PSR, Probation provided a guideline calculation without application of the cross reference. PSR ⁋ 36 FN 3. In its guideline calculation under USSG § 2G2.2, Probation added a five-level enhancement under § 2G2.2(b)(5). PSR ⁋ 36 FN 3. Nick respectfully submits this enhancement is not appropriately applied in his case.

USSG § 2G2.2(b)(5) applies "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." § 2G2.2(b)(5). Note One of the commentary to § 2G2.2 clarifies that a "pattern of activity" is defined as "any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct. § 2G2.2, commentary n.1. "Sexual abuse or exploitation" is defined as  "(A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)–(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" *does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor*."  *Id.* (emphasis added). In other words, individuals who engaged in a pattern of attempting to possess, access, receive, or traffic in materials depicting sexual abuse or exploitation are not subject to this enhancement.

In Footnote Three, Probation wrote the enhancement was justified as Nick attempted to "entice/induce minors V5, V4, and V9 to produce said material." However, that is not supported by the evidence in the Revised PSR. Moreover, as reflected in paragraph 8, with respect to V4 and V5 Nick was not attempting to produce photographs, but his efforts were attempting to possess. Thus, as his communication was directed to a pattern of attempts to receive and possess, the enhancement is not properly applied in his case.

### C. Acceptance of Responsibility.

In the Revised PSR, the Probation Office found that Nick had clearly demonstrated acceptance of responsibility for the offense, in part due to his agreement to plead guilty and as he provided forthright information to the Probation Office during his pre-sentence interview. PSR ¶¶32, 61. He was thus entitled to a two-point reduction pursuant to USSG §3E1.1(a). Revised PSR ¶¶32, 61. However, while Nick would typically be eligible for another point reduction pursuant to §3E1.1(b) the Probation Office declined to apply this reduction in Nick's case. Revised PSR ¶ 62. As a basis for denial of the additional point reduction, the Probation Office pointed to the fact that, while Nick pled guilty on April 24, 2023, the Government had been preparing for trial up until at least April 19, 2023. Revised PSR ¶ 62.

Nick respectfully submits he should receive an additional point reduction pursuant to §3E1.1(b). Moreover, while Nick was initially indicted on August 10, 2022, the Government sought two additional superseding indictments: the first on November 9, 2022, and the second on March 10, 2023. *See* Final PSR ¶¶1-3. It was not until April 23, 2023, that Nick was named in a three-count substitute information that formed the basis of his conviction in this case. *See* Revised PSR ¶ 4. He signed a plea agreement the same day and pled guilty the following day. (ECF No. S-3146806); Revised PSR ¶ 4.

Moreover, the defense respectfully submits that as to the charges of conviction, Nick pled guilty to an information, thus sparing the Government the time and expense of seeking an indictment and trial on the substitute information. Nick respectfully submits he should be granted the full, three-level decrease for his acceptance of responsibility.

### D. Criminal History Narrative Objections

In paragraphs 63-79 of the Revised PSR the Probation Office detailed Nick's past convictions, charges that did not result in a conviction, and other arrests. Revised PSR ¶¶ 63-79. In paragraphs 63-65, 67-69, 71-75, 77-79, the Probation Office also included narrative descriptions obtained exclusively from police reports. Revised PSR ¶¶ 63-65, 67-69, 71-75, 77-79.   In the narrative paragraphs accompanying Nick's convictions includes allegations of conduct that does not form the basis of his conviction. Further, with respect to the remaining narratives they refer to allegations that were dismissed and/or declined by the prosecution. In response to Nick's objections, the Probation Office declined to alter the report noting that the "arrests in this case are supported by consistency in that they appeared throughout the defendant's criminal history" and that the information in the paragraphs "are properly included." PSR Addendum at 3.

To clarify, Nick's objections are not directed to the inclusion of the information, including the fact his arrest, charge, or conviction for a given offense. His objections are to the Court's reliance on information exclusively found in the police narrative reports. *See Castillo-Torres*, 8 F.4th at 71 (where defendant had prior conviction for felony possession of a bladed weapon, allegation in the complaint that Defendant had also threatened someone with a knife was insufficiently reliable). For example, in paragraph 117A, the Probation Office cites the allegations in paragraph 79 – where prosecution was declined – as a possible basis to support an upward

departure. As is clearly reflected in the narrative, this information was gleaned exclusively from police reports.

Nick respectfully submits that this information that includes multiple layers of hearsay, clearly fails to meet threshold reliability requirements under First Circuit precedent. *United States v. Colon-Maldonado*, 953 F.3d 1, 9 (1st Cir. 2020) (criminal complaints or arrest records, without more, insufficiently reliable to support a preponderance of the evidence finding); *United States v. Rondon-Garcia*, 886 F.3d 14, 23 (1st Cir. 2018) (hearsay letter obtained by probation without more did not "sufficient indicia of reliability to meet the requisite preponderance of the evidence standard."). He thus maintains his objection to the Court's reliance on this information.

## II.     A SENTENCE OF LESS THAN 36 MONTHS FOLLOWED BY A TERM OF SUPERVISED RELEASE SATISFIES THE 3553A FACTORS.

### A.  Personal History and Characteristics.

> i.     *Nick's early childhood was marred by family instability, physical violence, and sexual abuse.*

As is detailed in the Revised PSR, Nick's childhood was not an altogether happy one. While Nick was provided the basics of food and a bed to sleep in growing up, beginning when he was very young, much of his childhood was characterized by his father's struggles with alcoholism. PSR ⁋ 83. While up until he was two years old, Nick lived with both his biological parents, due to his father's alcohol addiction, their marriage fell apart. PSR ⁋ 83. However, both parents were awarded joint custody of Nick. PSR ⁋ 83. His father remarried shortly thereafter to a woman who unfortunately also suffered from alcohol addiction. PSR ⁋ 83. As a result, Nick's father also sunk deeper into his addiction. PSR ⁋ 83.

For Nick, who was still a very young child, this was an especially dark time in his life. His stepmother and father in the throws of their own addiction were physically and verbally abusive

to Nick and each other. PSR ⁋ 83. As detailed in the Revised PSR, Nick was also the victim of sexual abuse during this time. PSR ⁋ 83. While other kids around Nick's age would be focused on spending time with friends, playing with toys, or other age-appropriate activities, for Nick, this time of his life was too-often characterized by his own struggle for basic safety. For example, Nick recalled placing a 5-gallon bucket every night outside his window – an escape route in the event things turned violent and he needed to get out of the house to call for help.

It is well-established that child abuse, particular child sex abuse, is vastly under disclosed. This is due to a complex set of factors, including fear for self or others if abuse is disclosed, shame or guilt, or, in the case of young children a lacking in understanding to recognize abuse has occurred. Elizabeth L. Jeglic Ph.D., *Understand Delayed Disclosure of Child Sexual Abuse, Psychology Today*, (June 21, 2023) https://www.psychologytoday.com/us/blog/protecting-children-from-sexual-abuse/202306/understanding-delayed-disclosure-of-child-sexual; CHILD USA, *Delayed Disclosure: A Factsheet Based on Cutting-Edge Research on Child Sex Abuse* (March 2020) https://childusa.org/wp-content/uploads/2020/04/Delayed-Disclosure-Factsheet-2020.pdf. Further adverse childhood experiences including abuse, exposure to violence or exposure to substance use are correlated with development of substance use disorders and other behavior health problems. Substance Abuse and Mental Health Services Admin. Ctr. for the Application of Prevention Tech., *The Role of Adverse Childhood Experiences in Substance Misuse and Related Behavioral Health Problems*, (June 2018) https://mnprc.org/wp-content/uploads/2019/01/aces-behavioral-healthproblems.pdf (detailing multiple studies finding relationship between adverse childhood experiences and later health, social and behavioral problems including substance use disorders); David Finkelhor, Heather Turner, Anne Shattuck, Sherry Hamby, & Kristen Kracke, *Children's Exposure to Violence, Crime, and Abuse: An*

*Update*, Office of Justice Programs, U.S. Department of Justice 2 (Sept 2015) https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/pubs/248547.pdf.

One day, while Nick was at school at Castine Elementary School a staff member noticed bruises on his face and arms PSR ⁋ 83. A referral was made to the Maine Department of Health and Human Services and an abuse investigation opened against Nick's father and his stepmother. PSR ⁋ 83. Nick went to live with his mother full-time, DHHS supervised visits with his father. PSR ⁋ 83. In 2007, when Nick was ten-years old, his father and stepmother divorced. PSR ⁋ 83. Starting at the outset of high school, Nick returned to splitting time between both parents. PSR ⁋ 83.

Nick, like many victims of child abuse, carried with him the anger and shame of what happened to him into his teenage years. He remained a child in crisis.  In response to an allegation made at school, Nick became suicidal. Revised PSR ⁋ 93. He was transported to the hospital by ambulance. He remained hospitalized for a period of nearly five months, from which time he was discharged to a group home. Revised PSR ⁋ 93.

ii.    *The trauma of abuse and his untreated mental illness formed the basis for his addiction.*

Nick enjoyed periods of stability and success, including completing a program at the Marine Mechanics Institute in 2015. Revised PSR ⁋ 97. However, internally, Nick continued to struggle. Nick first began smoking marijuana in 2013, when he was 16-years of age. Revised PSR ⁋ 97. He began drinking alcohol in 2015. Revised PSR ⁋ 97.  In 2017, Nick injured his foot in an accident and was prescribed various opioids and other medication for the pain.  Revised PSR ⁋ 95. Not long thereafter, Nick developed a full-blown drug addiction. Revised PSR ⁋ 97. Over the next two years, Nick was taking over 2,000 milligrams of Gabapentin, 20 milligrams of Adderall/Ritalin per day, along with both legally and illegally proscribed opioids. Revised PSR ⁋

97. He was also using cocaine and drinking excessive amounts of hard alcohol. Revised PSR ⁋ 95. With addiction, also came increasingly legal troubles including the conduct underlying the instant offense. In 2018, Nick lost his lobstering license. Revised PSR ⁋ 97. Moreover, during this period, Nick's life was out of control.

However, in 2021, Nick got sober. He ceased all illegal drug use. He began attending a dual diagnosis treatment program as well as regularly attending Alcoholics Anonymous. Revised PSR ⁋ 96.

      *iii.*     *Nick's age at the time of his offense weighs in favor of a downward variance.*

Through advances in brain science, society has increasingly shifted its understanding of child brain development particularly as it relates to crime and delinquency. While 18 remains the legal age of majority, neuroscience research has increasingly demonstrated that maturation of brain structure, brain function, and brain connectivity continues throughout the early twenties. Catherine Insel, Ph.D, Stephanie Tabashneck, PsyD., J.D., Francis X. Shen. J.D., Ph.D, Judith G. Edersheim, J.D., M.D., & Robert Kinscheriff, Ph.D., J.D., *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys, and Policy Makers*, 2 Ctr. for Law, Brain & Behavior at Massachusetts General Hospital  (Jan. 27, 2022) https://clbb.mgh.harvard.edu/white-paper-on-the-science-of-late-adolescence/ (hereafter "Science of Late Adolescence"); Richard Mendal, *Why Youth Incarceration Fails: An Updated Review of the Evidence*, The Sentencing Project, 20 (December 2022) https://www.sentencingproject.org/app/uploads/2023/03/Why-Youth-Incarceration-Fails.pdf.  (hereafter "Why Youth Incarceration Fails"). Particularly, the area of adolescent brains dedicated to impulse control, weighing consequences, and regulating behavior are less developed than in the adult brain, thus making in more likely that adolescents will engage in risky and impulsive behaviors or be more susceptible to peer pressures. *Id*.

Moreover, research has shown that late adolescents (age 18 -21) are more likely to respond like younger adolescents (ages 13-17) than like young adults (ages 22-25) due to differences in their brain maturation. Science of Late Adolescence at 3. In addition, exposure to early life stress can further impair development of the emotional regulation centers of the brain. *Id*. at 18. Exposure to violence or abuse (as compared to neglect) has the greatest impact on the brain processes that are involved in detecting threats, learning from emotional information, and regulating emotions. *Id*. at 19; *see also* Exh. 20, Marjorie Olivari Ltr. (Letter from Nick's doctor noting he has "made mistakes of impulsivity and immaturity exacerbated by his diagnosis").

Research on brain development has shown that as the brain develops these behaviors – including rule-breaking – decline significantly with age. Why Youth Incarceration Fails at 20. This is also true for individuals who have experienced childhood adversity, especially where they are provided access to additional social supports and resources. Science of Late Adolescence at 26. In short, the majority of youth age out of this problematic behavior and go on to become law-abiding and productive citizens.

In this case, the offense of conviction occurred in summer 2018. Revised PSR ⁋ 24. The earliest date of relevant conduct was 2012.  Revised PSR ⁋ 24. The most recent relevant conduct occurred in December 2018. Revised PSR ⁋ 24. Nick was born in 1997. In other words, Nick was a minor himself in 2012. In December 2018, he was just 21 years old.

Here, Nick acknowledges that his age does not absolve him of criminal responsibility for his actions. He is and remains legally responsible for his conduct. However, he is not the same person now that he was then. The change Nick has gone through is amply demonstrated in his letters of support. *See e.g*., Exh 1. Audrey Hamblem Ltr. ("Nick has been active in his community, completed the first responder EMT-B course. He has helped his elders whether it be

15

a ride to the store or repairing something in their home or just sitting and talking with them.");

Exh. 5. Darleen Hamblen Ltr. ("[O]ver the past four years he was getting his life set in a positive

way, I guess that frontal lobe matured. He built his own house, is engaged to a wonderful woman

and ready to marry and settle down and start a family."); Exh. 6, Deborah Hamlen Ltr.

("Nicholas has learned his lesson, is on the right path and has self-rehabilitated himself over the

past five years."); Exh. 11, Duane Bunker Ltr. ("The past four years have been a total opposite to

what I saw just six years ago. Nick is much more mature, seasoned and extremely polite and

respectful. He has done countless jobs for my family at the farm."); Exh. 19, Madison Cram Ltr.

("Nicholas has turned his life around. He has a long-term relationship, an extremely successful

job, built a home, a life, and most importantly a family. Nicholas is surrounding himself with the

people that are positive influences for him, and people that mean the most to him.)

> iv.  *Nick's current age weighs in favor of a downward variance.*

Rehabilitation is also a goal of punishment. 18 U.S.C. § 3553(a)(2)(D). That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment.

*United States v. Carvajal*, 2005 WL 476125, at **15-16 (S.D.N.Y. Feb. 22, 2005).

As discussed above, while the offense occurred five years ago, as Nick was only 21 years

old at the time, he is still only 26. In other words, this is the beginning of what would typically

be a time that a young adult would begin building a successful career and family.

Nick is a hard worker. As documented in his letters of support, he is a gifted carpenter

and well-respected in his trade. Nick also is lucky to have the support of a loving and committed

partner and her family. *See* Exh. 3, Christopher Cram Ltr; Exh. 17, Lacey Cram Ltr.; Exh. 19,

Madison Cram Ltr. Nick understands that is likely he will serve an additional term of

imprisonment as well as a substantial term on supervised release. However, he respectfully submits that an appropriate punishment would factor in his age and allow for time to return to the community, build himself a career, support his family, and prove that he can be a contributing member of his community.

### B.  Comparative Sentences.

Among the factors to be considered in imposing a sentence, § 3553(a) directs that the Sentencing Court consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. To assist the Court in sentencing in this matter, defense counsel undertook a brief survey of the punishment imposed on offenders in recent cases in this District. The facts included are gleaned both from public information provided by the U.S. Attorney's Office [4] and public filings.

- *United States v. Carr*, 2:22-cr-00134: in September 2019, Carr, 52, began chatting with an undercover FBI agent posing as a 13-year-old girl in an online chatroom designed for children aged 16 and under. Over the course of the next several weeks, Carr repeatedly asked the agent, who he believed was an underage girl, for sexually explicit photos and expressed an interest in having sex with her. In October 2019, he sent the undercover agent a close-up photograph of his penis. While there was a prior charge related to child pornography (ECF No. 28) at 4, Mr. Carr had no criminal history points. The Court imposed a sentence of 21 months in prison.

- *United States v. Streeter,* 2:21-cr-00185: in late 2020, Streeter, 28, contacted a 16-year-old girl on Instagram and TikTok and began a months-long interaction with her online. At the time, Streeter resided in Norwich, New York, and the victim lived in Maine. Streeter groomed the victim by repeatedly telling her that she was attractive and that he loved her and wanted to marry her. He also sent graphic messages in which he expressed his interest in having sex with her. In April 2021, Streeter traveled to Maine with the intent to pick up the victim and take her back to New York. The victim's father unsuccessfully attempted to stop Streeter and the girl from leaving, and an AMBER alert was issued. The victim was recovered from a residence in Syracuse, New York and returned to Maine the following day. Streeter was a registered sex offender following a 2017 conviction in New York

---

[4] Most information was gleaned from press releases from the U.S. Attorney's Office for the District of Maine available here at https://www.justice.gov/usao-me/pr.

for sexually abusing a 10-year-old girl. The Court imposed a sentence of six years in prison.

- *United States v. Kiesel*, 2:21-cr-00172: in April 2021, Kiesel, 49, engaged in an internet chat with an undercover member of law enforcement posing as a 13-year-old girl. During the chat, Kiesel steered the conversation towards the topics of sex and sexual contact and ultimately transmitted images of his erect penis to the undercover officer. Following the execution of a search warrant at his residence, numerous sexually explicit images of minors were recovered from his computer. According to court documents, at the time of his arrest, Kiesel was employed as an Ed Tech II at Biddeford Middle School. The Court imposed a sentence of 44 months.

- *United States v. Melycher*, 2:21-cr-00169-JAW: In August 2020, Melycher, 30, drove from his residence in Connecticut to Gorham, Maine to engage in sexual conduct with the minor victim. The trip followed weeks of contact between Melycher and the victim over Snapchat and other chat platforms during which time Melycher, who initially told the victim he was 19, pressured the victim to send sexually explicit images despite knowing the victim was only 13. The Court imposed a sentence of 135 months in prison.

- *United States v. Hazelton*, 2:21-cr-00067-JAW: In October 2019, Hazelton, 29, chatted online with a 10-year-old girl. During the chat—after learning that the girl was 10—he said he wanted to see her "sexy body," and asked her to send him pictures of her in her panties and without a shirt. He also said he wished he could have sex with her. The Court imposed a sentence of five years in prison.

- *United States v. Suero*, 2:18-cr-00103 Court records reveal that on April 19, 2017, Suero, 23, and the victim, who was 15 years old at the time, connected online. Thereafter, Suero and three others picked the victim up at a Hannaford store and drove her to a private residence in the Bangor area.  While there, there was a discussion about prostitution, and it was suggested that the victim, who had no money, would engage in prostitution with Suero's assistance and give him a portion of the money.  Suero paid for a hotel room in Bangor for the victim and another adult female, and between April 20 and 22, the 15-year-old victim engaged in multiple commercial sex acts, giving a portion of the proceeds to Suero.  On April 22, Suero paid an associate to drive him and the victim from Bangor to a motel in Scarborough, Maine, where Suero introduced the victim to his mother, Lourdes Suero.  Isaac Suero left the victim at the motel with his mother, and the victim continued to engage in commercial sex acts in the Scarborough area.  The Court imposed a sentence of nine years in prison.

Nick respectfully submits that when looking at the punishments imposed in the above matters, a sentence of no more than 36-months is sufficient but not greater than necessary.

**C. Nick Understands the Seriousness of this Offense and is Remorseful. He Also Has a Robust Support Structure to Support His Successful Re-entry Back Into the Community.**

Nick understands that he has committed a serious offense. He recognizes that his behavior was unacceptable. He is remorseful for the harm that he has caused. *See* Exh. 3, Christopher Cram Ltr. ("Not only Nick but everyone involved with this case will carry a scar from his actions. In time all things will pass both good and bad but scar will remain. He has taken responsibility for it."); Exh. 14, Gordon Workman Ltr. ("He is remorseful for any harm he has caused."). In pleading guilty he accepted the prosecution version of the offense. Further, as noted by the Probation Office he was candid and forthcoming during his presentence investigation interview. Revised PSR ⁋ 31. During his eight months on pretrial supervision, he has had no violations and successfully maintained his sobriety. *See* Revised PSR ⁋6.

Throughout the pendency of this case, Nick has focused on addressing the issues that contributed to the circumstances of the offense. He has begun the painful process of addressing what happened to him as a child. *See* Exh. 21, Melinda Workman Ltr. ("He has done the difficult work of battling drugs/alcohol and is currently getting help dealing with the childhood abuse he has suffered. He has a wide family and friends support network. He has expressed remorse for any harm caused by his erratic behavior and poor decisions to me on multiple occasions."). He has worked hard to maintain his recovery and sobriety and develop healthier coping mechanisms. Prior to his incarceration he dedicated himself to being a contributing and caring community member. *See* Exh. 4, Constantino Basile Ltr. (detailing instance when Nick took care of a fallen tree that created a dangerous situation in her yard).

Finally, as is clear from his many letters, Nick is exceptionally lucky to have a community to support him, hold him accountable, and assist in his reentry home. *See e.g.,* Exh.

32, Walter Foster Ltr. ("Nicholas has a complete support system ready for him to embrace him to ensure that path of healing will continue.").

## III.   CONCLUSION

In sum, Nick respectfully requests that in consideration of his personal history and characteristics, remorse, rehabilitation since the time of the offense, and comparative sentence of similar defendants, a sentence of not more than 36-months followed by a term of supervised release is a sufficient but not greater than necessary punishment, thus satisfying the 3553(a) factors.

Dated this 3rd day of November 2023, at Portland, Maine.

Respectfully submitted,

/s/ Thomas Hallett
_____
Thomas Hallett, Esq, Bar No. 3124
Attorney for Defendant
HALLETT WHIPPLE WEYRENS
6 City Center, Ste. 208
P.O. Box 7508
Portland, ME 04112
PH: 207-775-4255
thallett@hww.law


/s/ Grainne Dunne
_____
Grainne Dunne, Esq, Bar No. 6738
Attorney for Defendant
HALLETT WHIPPLE WEYRENS
6 City Center, Ste. 208
P.O. Box 7508
Portland, ME 04112
PH: 207-775-4255
gdunne@hww.law

20

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I, **Grainne Dunne**, hereby certify that I have served electronically, a copy of this motion upon **Assistant United States Attorney Chris Ruge, Esq.**, via the ECF System.

Dated: November 3rd, 2023

 /s/ *Grainne Dunne*

Counsel for the Defendant